UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACOB DVORAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-66-AZ |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **<u>OPINION AND ORDER</u>**

This matter is before the Court on Plaintiff Jacob Dvorak's appeal of the

Commissioner of the Social Security Administration's (the "Commissioner") denial of

disability benefits.[1] Dvorak argues that the Administrative Law Judge ("ALJ")

committed error by failing to adequately consider his obesity when ruling on his

application for benefits. For the reasons discussed, the Court disagrees with Dvorak's

arguments and finds no reversible error by the ALJ. Accordingly, the Court will

affirm the ALJ's written decision.

## **Background**

Plaintiff Jacob Dvorak filed an application for child's insurance benefits based

on disability and supplemental security income on April 4, 2022. A.R. 29.[2] He was 20

---

[1] On May 20, 2205, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 15.

[2] Citations to the Administrative Record, filed at DE 8, are throughout as "A.R."

years old when he applied for disability. A.R. 36. He has a high school education and had no past relevant work or transferable job skills. *Id.* at 32.

Dvorak applied for benefits claiming a disability onset date of November 10, 2002, or since birth. *Id.* at 20, 32. His claims were denied in his initial application and upon reconsideration, and Dvorak requested a hearing before an ALJ. *Id.* at 29. On May 23, 2022, the ALJ held a hearing at which Dvorak was represented by an attorney and a Vocational Expert ("VE") testified. *Id.* On July 21, 2023, the ALJ issued a written decision denying benefits. A.R. 29-38. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. A.R. 12. Plaintiff filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Dvorak was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. A.R. 32. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disk disease, congenital kyphosis, Achilles tendinitis, and flat feet. A.R. 32. The ALJ did not make any particular finding as to Plaintiff's BMI or obesity.

The ALJ next considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. The ALJ determined Plaintiff did not meet Listing 1.15 (musculoskeletal disorders) Listing 1.16 (lumbar spinal stenosis)

and Listing 1.18 (severe joint problems) *Id.* at 32-33. The ALJ found that Plaintiff's impairments or the combination of them did not meet or equal any applicable listing because he did not have a documented medical need that satisfied all of requirements of any of these spine or joint-related listings. *Id.*

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess his Residual Functional Capacity (RFC). The ALJ found he had the capacity:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: Never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance as defined in the SCO of the DOT; occasionally stoop, kneel, and crouch, and no crawling; avoid concentrated exposure to extreme cold, wetness, vibration, and hazards such as unprotected heights and moving mechanical parts; after sitting for 30 minutes, the claimant would have the opportunity to stand for up to 5 minutes but can remain on task.

A.R. 33.

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. While the ALJ recognized that Plaintiff's "medically determinable impairments could reasonable be expected to cause alleged symptoms," his statements concerning "the intensity, persistence and limiting effects of these symptoms" were not entirely consistent with the record and the evidence only "partially support[ed]" his allegations. A.R. 34. The ALJ noted that the "only available objective medical evidence" during the period immediately preceding Plaintiff's application for benefits was a physical consultative exam from May 2022 with a Dr. Rao. That examination showed that while Plaintiff was unable

to squat and rise "with ease," he "was able to walk on heels and toes, tandem walk, [and] hop on one foot bilaterally," albeit with some limitations. *Id.* at 35. The ALJ noted that some of Dr. Rao's findings however, such as that Plaintiff required a cane for any "prolonged activity," were not supported by the record. *Id.* Plaintiff did not use a cane at the exam and testified at the hearing that he did not use a cane. *Id.*

The ALJ further reviewed the opinions of the state agency medical consultants[3] who both opined that Plaintiff could "perform work at the sedentary exertional level with limitation to standing and walking of 2 hours and sit 6 hours in an eight-hour day," as well as additional minor limitations. *Id.* at 35; *see also id.* at 100-113 (Dr. Sands assessment); *id.* at 116-127 (Dr. Corcoran assessment). The ALJ found these opinions to be generally persuasive and adopted the limitations suggested by the state agency medical consultants. *Id.* at 36. The ALJ also included an additional limitation that "after sitting for 30 minutes" Plaintiff should "have the opportunity to stand for up to 5 minutes but can remain on task." *Id.* at 33.

As to Plaintiff's testimony at the hearing regarding his limitations, the ALJ noted that his "allegations of severe pain and limitations such that he can stand for 1 minute to 5 minute, and has 5 days per month where he cannot get out of bed, are simply not consistent with the record that shows limited treatment, and the consultative examination findings – including a normal gait, no acute distress, and

---

[3] In the written decision, the ALJ identified the state agency medical consultants as Dr. Amigo and Dr. Noon. A.R. 35. As the Commissioner notes, those individuals' names are actually Dr. Sands and Dr. Corcoran. *See* DE 19 at 7, n.4. Plaintiff does not raise this issue as an error requiring reversal and the Court sees this as a matter of a simple typographical error on the ALJ's part given that the underlying evidence was accurately quoted and discussed by the ALJ, albeit with incorrect references to those individuals' names.

moderate standing/walking/sitting limitations." *Id.* at 36. And while there was evidence that Plaintiff used a cane at times, Plaintiff testified that he did not use one regularly and did not attend exams with a cane. *Id.* at 35. The ALJ further noted that Plaintiff "could perform personal hygiene and dress independently, manage his medical care, prepare small meals, and perform some household chores," including monthly grocery shopping. *Id.* at 34. Plaintiff further reported playing video games daily, either with friends or online. *Id.*

At step four, Plaintiff had no past relevant work for the ALJ to consider whether Plaintiff could return to. A.R. 36. But the ALJ found there were sufficient jobs that Plaintiff could perform given his RFC. Representative examples included order clerks, charge account clerk, or document preparer, all sedentary exertional level unskilled work. *Id.* at 37. Accordingly, at step five, Plaintiff was found not to be disabled and the application for child's insurance benefits and for supplemental security income were denied. *Id.* at 38.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts

are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). But "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner*, 627 F.3d at 618. Remand is appropriate only "when

6

it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

On appeal, Plaintiff argues that the ALJ's failure to list his obesity as a severe impairment or adequately consider it when formulating his RFC amounted to reversible error. Plaintiff correctly points out that one of the state agency physicians, Dr. Sands, listed obesity as one of Plaintiff's severe impairments. A.R. 102, 109. Plaintiff's underlying medical records documenting his height and weight, further indicate a Body Mass Index ("BMI") in the low-to-mid 30s at various points in time from 2017-2022. *See, e.g.*, A.R. 440, 399 and 375. Plaintiff is furthermore correct that the ALJ did not include obesity as a severe impairment. But beyond that, Plaintiff's argument fails to persuade that remand is required.

In order for the Court to reverse the ALJ's otherwise supported decision, Plaintiff must do more than simply identify an impairment that was not included in the list formulated at step two. An ALJ's failure to include something as a severe impairment at step two is subject to harmless error analysis. *See Crowell v. Kijakazi*, 72 F.4th 810, 818–19 (7th Cir. 2023). So while it may have been better for the ALJ to include obesity as severe impairment, that is not a basis to reverse and instead the Court must examine what harm, if any, may have resulted from this apparent omission. Plaintiff fails to show any harm from the ALJ's failure to include obesity as a severe impairment.

As part of building the "logical bridge" between the evidence and conclusions, ALJs must "consider the effects of obesity together with the underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). That is because of the possible exacerbation of impairments or symptoms because of obesity. *See Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). But "a failure to consider the effect of obesity is subject to harmless-error analysis." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). In other words, an ALJ's decision-making is not a box-checking exercise and reversal is not required simply because an ALJ did not reference obesity a number of times in the written decision of a claimant with a BMI over 30. *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work.").

"It is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Instead, a claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.* "There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Here there is no medical opinion evidence related to any additional limitations from obesity which the ALJ did not impose. Plaintiff does not argue that the state agency examiners were unaware

of or did not consider the effects of Plaintiff's obesity. And the ALJ adopted all of the state agency's restrictions *and then added additional restrictions*. That is not error. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021); *Rice*, 384 F.3d at 370 (concluding ALJ could rely on state-agency doctors, and "[m]ore importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ"). When an ALJ adopts the limitations suggested by specialists and reviewing doctors who were aware of a claimant's obesity, reviewing courts consider it "factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Here, the issue is even more acute, as the ALJ imposed more restrictions than those found by the state agency doctors. It is a little odd for Plaintiff to claim that the ALJ erred by imposing more limitations than what the medical opinion evidence imposed. Instead of citing or quoting medical records reflecting additional limitations form obesity (or even Plaintiff's own testimony), Plaintiff relies only on vague conjecture and speculation as to how his obesity *might* impact him. DE 16 at 11. ("Plaintiff's obesity *would* directly impair each of their severe impairments, adding additional stress and pain to their back condition, complaints of pain and reported functional ability.") (emphasis added). That is not enough. *Stepp*, 795 F.3d at 720; *Skarbek* 390 F.3d at 504 (affirming ALJ's decision when claimant failed to explain how obesity impair his abilities "but speculates merely that his weight makes it more difficult to stand and walk"). In other words, speculation alone is not a basis to remand. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

9

Elsewhere, Plaintiff points to his own testimony that he can stand for a maximum of 30 minutes without sitting down and walk for a minute at a time. DE 16 at 12 (citing A.R. 58). But again, the ALJ limited plaintiff to sedentary work with the opportunity "after sitting for 30 minutes…to stand for up to 5 minutes but can remain on task." A.R. 33. As discussed above, the ALJ formulated this RFC based on the limitations found by the state agency examiners and a lengthy narrative discussion of Plaintiff's medical history and how it only partially supported his allegations of being unable to work. A.R. 33-36. There is nothing inconsistent, illogical or unsupported about the ALJ's conclusions and Plaintiff does not really argue as much. In effect, he seems to suggest that the omission of the word obesity in the written decision by itself requires reversal. But the ALJ's task is to assess the record as a whole to distill the outer limitations of a claimant's abilities to sustain gainful employment, not conduct a checkbox exercise summary of everything in the file. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) ("The ALJ is not required to address every piece of evidence or testimony presented").

In summation, Plaintiff points to no limitation(s) that was actually omitted which was supported by any medical evidence, objective, opinion or otherwise. Speculation is not enough and so there is no medical evidence which would support greater limitations than those found by the ALJ and therefore no error.

10

## Conclusion

For the reasons discussed, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant Commissioner of Social Security.

SO ORDERED this 17th day of March 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT